**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br>vs.<br><br>Francisco Garcia-Gastelum,<br><br>   Defendant. | CR 15-01308-TUC-RCC (DTF)<br>CR 14-00507-TUC-RCC (DTF)<br><br>**REPORT AND RECOMMENDATION OF COMPETENCY** |

Pursuant to a request by Defendant's counsel, the Court conducted a competency proceeding which took place on September 9 and September 13, 2016. (Docs. 35, 40, 15-01308-RCC-DTF) Defendant was present and represented by counsel. The matter was taken under advisement following the testimony. (Doc. 40, 15-01308-RCC-DTF; Doc. 115, 14-00507-RCC-DTF)

Having considered the entirety of the record, including all written competency evaluations, testimony and all exhibits, the Magistrate Judge recommends that the District Court, after its independent review, find by a preponderance of the evidence that Defendant is competent to proceed to trial.

**PROCEDURAL HISTORY**

The case before the Court has a long and circuitous history, which the Court considered in reaching its findings.

*Garcia-Gastelum I*

In February 2014, Francisco Garcia-Gastelum ("Defendant") was arrested and charged with illegal reentry of a removed alien. (Docs. 1 and 5, *United States v. Francisco Garcia-Gastelum*, 14-00507-RCC-DTF ("*Garcia-Gastelum I*")). In *Garcia-Gastelum I*, attorney Matthew McGuire was appointed to represent Defendant. (Doc. 3, *Garcia-Gastelum I*). Defendant was tried and convicted. (Docs. 49, 50, 58, *Garcia-Gastelum I*). As noted in the Presentence Report in *Garcia-Gastelum I*, Defendant had, years earlier, been diagnosed with depression and psychotic features, but Defendant claimed he had not suffered any major psychological incidents since 2001. (Doc. 72 at ¶ 35, *Garcia-Gastelum I*). On March 13, 2015, Defendant was sentenced to 16 months imprisonment with three years' supervised release. (Docs. 75, 76, 77, *Garcia-Gastelum I*). On March 19, 2015, Defendant filed a notice of appeal. (Doc. 78, *Garcia-Gastelum I*).

*Garcia-Gastelum II*

On June 23, 2015, Defendant was again arrested for allegedly committing a new violation of illegal reentry of a removed alien. (Doc. 1, *United States v. Garcia-Gastelum*, 4:15-cr-01308-RCC (DTF) ("*Garcia-Gastelum II*")) Attorney Henry Jacobs was appointed to represent Defendant. (Doc. 4, *Garcia-Gastelum II*) Thereafter, the grand jury returned an indictment charging Defendant with the offense of illegal reentry of a removed alien. (Doc. 6, *Garcia-Gastelum II*) At the time of Defendant's arrest, he was still serving his term of supervised release in *Garcia-Gastellum I*. (Doc. 77, *Garcia-Gastelum I*) As such, on September 4, 2015, probation field a Petition to Revoke Supervised release. (Doc. 88, *Garcia-Gastelum I*). Attorney Henry Jacobs was appointed to represent Defendant in the

supervised release matter, while attorney Matthew McGuire continued to represent Defendant in his appeal before the Ninth Circuit. (Doc. 90, *Garcia-Gastelum I*).

On September 18, 2015, Defendant moved the Court for an order directing that a competency examination be performed by Dr. Barry Morenz. (Doc. 14, *Garcia-Gastelum II*) Defendant's request was granted (Doc. 15, *Garcia-Gastelum II*) and, on January 5, 2016, the Court held a status conference regarding Defendant's competency. (Doc. 20, *Garcia-Gastelum II*). Dr. Morenz's report was received by the Court and filed under seal. (Doc. 21, *Garcia-Gastelum II*). Based on Dr. Morenz's findings the Court ordered Defendant committed to the custody of the Attorney General to be hospitalized for a reasonable period of time for restoration. (Doc. 22, *Garcia-Gastelum II*).

On July 25, 2016, the matter came back before the Court for status regarding Defendant's mental competency. (Doc. 28, *Garcia-Gastellum II*) A Psychiatric Report and Certificate of Restoration of Competency to Stand Trial ("Psychiatric Report") were filed under seal without objection. (Docs. 28, 29, *Garcia-Gastelum II*). Defense counsel objected to the findings contained in the Psychiatric Report (Doc. 31) and the Court granted Defendant's request for an evidentiary hearing on the matter. (Doc. 33, *Garcia-Gastelum II*).

**COMPETENCY HEARING & DOCTORS' REPORTS**

At Defendant's request and to accommodate witness schedules, the evidentiary was postponed until September 9, 2016. (Doc. 30, 32, 34, 35, *Garcia-Gastelum II*) On September 9, 2016, Dr. Robin Watkins, a Board Certified Forensic Psychologist, testified by telephone. (Doc. 36, *Garcia-Gastelum II*). Dr. Watkins was assigned to Defendant's case at the Federal Medical Center and had almost daily contact with him. Dr. Watkins testified consistent with her Psychiatric Report, dated June 8, 2016, which found that Defendant suffered from "Schizophrenia Spectrum" with "antisocial personality features."

(Doc. 29 at p. 12, *Garcia-Gastelum II*)[1] While at the Federal Medical Center Defendant was prescribed, and began voluntarily taking, psychotropic medication. (*Id*. at p. 8). According to Dr. Watkins, she saw an improvement in Defendant after he began taking the medication and she opined that the difficulty communicating with Defendant was primarily due to antisocial personality features, not from his mental disorder. Dr. Watkins found Defendant competent to stand trial.

Dr. Barry Morenz, Associate Professor of Clinical Psychiatry at the University of Arizona Medical Center also testified by telephone. On December 8, 2015, Dr. Morenz examined Defendant to evaluate (1) whether he had the ability to understand the proceedings against him and (2) whether he was able to assist his attorney in his own defense. Dr. Morenz prepared a report of his evaluation and his testimony at the evidentiary hearing was constituent with his report. (Doc. 21, *Garcia-Gastelum II*)[2] Dr. Morenz testified that he was aware of Dr. Watkins' opinion that Defendant's competency had been restored at the time Defendant left her care at the Federal Medical Center. According to Dr. Morenz, the conditions faced by Defendant upon his return to Arizona would have been different from those that he faced at the Federal Medical Center where he was sent for evaluation. For instance, one was a medical environment, with medical and nursing staff immediately present to assist Defendant, and the other was a detention setting with medical attention more remotely available.

Defense counsel questioned Dr. Morenz about Dr. Watkins' opinion that Defendant could control his behavior, but chose not to due to behavioral conditions, and whether he (Dr. Morenz) had observed the same thing during his examination. Dr. Morenz testified that was a "tricky question" in that how much is an individual's ability to focus, concentrate, and behave in a certain way under their control. Dr. Morenz explained in his

---

1 (entered into evidence at the evidentiary hearing as Exhibit 1)
2 (entered into evidence at the evidentiary hearing as Exhibit A)

testimony, for example, that a malingerer has complete control, while an individual who is floridly psychotic and not in any way in touch with reality, and who is extremely agitated, has no ability to change their behavior. According to Dr. Morenz, Defendant had significant problems when he examined him. He could adjust to some degree, but circumscribed. However, Dr. Morenz also noted that at that time of his examination (on December 8, 2015) Defendant was not on any medication.

Dr. Morenz' testimony was not concluded on September 9th due to his schedule and, as such, he was to be recalled on September 13th to allow the government's cross-examination. However, on September 13th the government waived their right to cross-examination in exchange for the stipulation that Dr. Morenz had not seen Defendant since his examination on December 8, 2015.

Defendant also called Myrna S. Gonzalez. Ms. Gonzalez is attorney Jacobs' paralegal and she acted as an interpreter during Defendant's attorney interviews. According to Ms. Gonzalez, she and attorney Jacobs met with Defendant twice to discuss the plea agreement offered by the government; once before he was sent to the Federal Medical Center and once after he returned. She testified that she believed Defendant to have understood everything she said to him and that she understood everything Defendant said to her. During these interviews, attorney Jacobs explained the benefits of the plea agreement to Defendant and explained that without the plea agreement he (Defendant) would face more time in prison. According to Ms. Gonzalez, Defendant repeatedly responded to attorney Jacobs' numerous efforts to talk about the plea agreement by complaining about the injuries to his fingers and his surgical scar. Defendant claimed the government owed him for his injuries reasoning that since he lost his fingers in the United States, the United States government owed him for his injuries. During the interview process, Defendant did not ask any questions about his chances of success at trial or whether he could get less time or get a better plea offer from the government. Ms. Gonzalez

testified that Defendant's responses were the same before he went to the Federal Medical Center as they were after he returned; namely, Defendant simply would not focus on the plea agreement.

Defendant also testified and stated that he understood what he was charged with and that he had returned to the United States because he has been working here for many years.[3] He understood that he was charged with reentering the country illegally and that he was here illegally. According to Defendant, attorney Jacobs had not explained his option to go to trial and confront the charges.[4] Defendant denied that attorney Jacobs had told him the government had offered him a plea bargain. Defendant testified that he understood that he could receive less time from a plea agreement, but claimed that he was not told that by his lawyer. Attorney Jacobs asked Defendant that if he were told he could have a plea agreement would he want a plea agreement. Defendant responded that he would have to give up his right to appeal if he took a plea offer. Attorney Jacobs asked why his appeal rights are important to him and Defendant responded that he planned to return to the United States as soon as he was released from prison.

Attorney Jacobs then asked whether Defendant liked being in jail to which Defendant responded that he was receiving medical treatment for his injuries and his hernia while in jail. When asked whether he would want to spend more or less time in jail, Defendant responded that he will never sign anything, but "we all want less time" and the law has been very harsh with him. Attorney Jacobs asked Defendant if he would be interested in a plea agreement if it meant that he would spend less time in jail. Defendant responded that he would have to see it first and have it clearly explained to him before he could decide. Defendant acknowledged that attorney Jacobs had asked him about a plea

---

[3] Defendant has four children all of whom are United States citizens. (Doc. 72 at 32, *Garcia-Gastelum I*). Before being deported, Defendant was a lawfully admitted permanent resident. (*Id*. at ¶ 31).

[4] Attorney Jacobs did not offer evidence or a proffer that contradicted Defendant's claim that attorney Jacobs had not explained his option to confront the charges by proceeding to trial.

agreement, but said it had never been explained to him in any detail. Defendant said that he would like to know the details of the plea agreement.

Attorney Jacobs then posed a hypothetical to Defendant: If he were told that he would receive a longer sentence if he went to trial than if he accepted the plea agreement, which option would he choose? Defendant responded that, logically, he would want the one with the shorter time but there would have to be some reason to take the plea offer. Attorney Jacobs asked Defendant whether he was concerned about losing his right to appeal and he responded "not exactly," but that he wanted something fair.

Attorney Jacobs also asked Defendant whether he remembered Dr. Watkins prescribing medication. Defendant correctly remembered that Dr. Watkins had not been the prescribing doctor; rather it was another doctor who prescribed the medication.[5]

On September 13, 2016, attorney Jacobs reported to the Court that because Defendant had expressed an interest in the plea agreement at the September 9th hearing he again met with him. According to Mr. Jacobs, he, along with Ms. Gonzales, visited with Defendant immediately after the September 9th hearing to discuss the plea agreement. Mr. Jacobs proffered to the Court that he experienced the identical responses he had received at each point in the past - he had no meaningful discussion with Defendant about the plea agreement.

## ANALYSIS

A defendant's right not to stand trial while incompetent is rooted in his constitutional right to due process. *See Maxwell v. Roe*, 606 F.3d 561, 564 (9th Cir. 2010.) The defendant's ability to understand the proceedings and participate in the defense is considered "fundamental to an adversary system of Justice." *Dusky v. United States*, 362 U.S. 402 (1960) (quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975)). The standard for competency is whether the defendant has "sufficient present ability to consult with his

---

[5] The prescribing doctor was a psychiatrist. Dr. Watkins is a psychologist and does not prescribe such medication.

lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him." *Torres v. Prunty*, 223 F.3d 1103, 1106 (9th Cir. 2000) (quoting *Dusky*, 362 U.S. 402); *Maxwell*, 606 F.3d 561; 18 U.S.C. § 4241(d). The Government has the burden of demonstrating by a preponderance of the evidence that the defendant is competent to stand trial. *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1992).

The record in this case preponderates that Defendant is competent to stand trial and assist his counsel in his defense. Dr. Watkins' opinion that the Defendant's competency has been restored is supported by Defendant's own testimony. It is clear from Defendant's testimony that he understands the charges against him and can assist his lawyer in his own defense. Interestingly, defense counsel offered no evidence that he had even discussed the possibility of a defense with Defendant. Indeed, Defendant testified Mr. Jacobs had not discussed with him his right to trial and Mr. Jacobs intimated to the Court there was no defense. It is abundantly clear from the record that Defendant is unsure about committing himself to a plea agreement. He refused to do so in his last case and it proceeded to trial. (Docs. 49, 50, *Garcia-Gastelum I)* In short, the record is devoid of evidence to support a finding that Defendant presently lacks competence to stand trial.

Lastly, the Court determines that the delay resulting from Defendant's mental competency examination is excludable under the Speed Trial Act, 18 U.S.C. § 3161(h)(1)(A). *See United States v. Antoine*, 906 F.2d 1379, 1380 (9th Cir. 1990) ("Delays resulting from mental competency examinations are […] excluded."). The time that this Court had the matter under advisement is also excludable. *See* 18 U.S.C. § 3161(h)(1)(H) ("The following periods of time shall be excluded … (H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is under advisement by the court."). *See also, United States v. Thomas*, 2011 WL 2472576, at *9, 10-CR-00628-TUC-CKJ (D. Ariz. 2011) ("[t]he issuance of the report

and recommendation [begins] a new excludable period" (quoting *United States v. Long*, 900 F.2d 1270, 1274-75 (8th Cir. 1990).).

Accordingly,

## RECOMMENDATION

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court **FIND by a preponderance of the evidence that Defendant is competent to proceed to trial**. Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived.

Dated this 15th day of September, 2016.

D. Thomas Ferraro
United States Magistrate Judge